United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELY RAZON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No. 17-CV-00869-LHK<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 50 |

Plaintiffs Fely Razon ("Razon"), A.S.B., and N.M.S.B. (collectively, "Plaintiffs") filed a civil rights complaint against Defendants Maryann Barry, R.N. ("Barry"), Sean Kanakaraj, M.D. ("Kanakaraj"), Yolanda Ramirez, R.N. ("Ramirez"), Kimhoang Truong, R.N. ("Truong"), Amor Caubang, R.N. ("Caubang"), Elizabeth Santos, R.N. ("Santos"), Derrick Cosca, R.N. ("Cosca"), and the County of Santa Clara ("County") (collectively, "Defendants"). *See* ECF No. 1. In their complaint, Plaintiffs assert five causes of action related to the death of Ryan Bascos ("Bascos"), a pre-trial detainee who was the father of A.S.B. and N.M.S.B. and the son of Razon. Generally, Plaintiffs allege that Bascos's death was caused by Defendants' failure to provide for Bascos's serious medical needs. Before the Court is Defendants' motion for judgment on the pleadings. ECF No. 50. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision

1

without oral argument and accordingly VACATES the motion hearing set for January 18, 2018, at 1:30 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS with leave to amend Defendants' motion for judgment on the pleadings.

## I. BACKGROUND

### A. Factual Background

Plaintiffs allege that at all times relevant to this case, Defendant Barry was employed by the County as "Director of Custody Health Services" for the entire County, and that Defendants Kanakaraj, Ramirez, Truong, Caubang, Santos, and Cosca were "employed by [the County] as health care providers in its main jail, and each was acting within the course and scope of that employment." ECF No. 1 ("Compl.") ¶¶ 8–9.

In the fall of 2015, Bascos "was diagnosed with an enlarged heart, heart failure, pulmonary hypertension, asthma, shortness of breath and difficulty walking due to his heart problems." *Id.* ¶ 19. On January 16, 2016, Bascos "was admitted to El Camino Hospital for shortness of breath and stayed there for almost a week." *Id.* Bascos left the hospital with an oxygen tank and numerous medications. *Id.*

Shortly afterwards, on January 27, 2016, Bascos "was incarcerated at the Main Jail in Santa Clara County." *Id.* ¶ 20. Upon conducting a medical intake assessment for Bascos at the Main Jail, Defendant Santos "noted that [Bascos] had an enlarged heart, was taking medication, used albuterol, and had a history of hypertension, shortness of breath, and wheezing." *Id.* On January 28, 2016, Bascos was transferred to the County's Elmwood Correctional Facility. *Id.* Plaintiffs allege that during Bascos's three-week stay at Elmwood Correctional Facility, Bascos "received his medications and an oxygen tank providing the required oxygen therapy." *Id.*

Bascos returned home after his three-week stay at Elmwood Correctional Facility. However, on April 21, 2016, Bascos was arrested at his home "on a warrant for failing to appear in court the previous week." *Id.* ¶ 21. During the arrest, "the arresting officers saw [Bascos's] oxygen equipment and asked who it belonged to." *Id.* Both Bascos and his younger brother

2
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

Joseph Bascos—who was the only other person at home—told the officers that it belonged to Bascos, and that Bascos "had to take his oxygen and medication with him to the jail." *Id.* Plaintiffs allege that the officers said Bascos was not allowed to take his medications or his oxygen equipment, "but that he would get his necessary life-sustaining oxygen therapy and medical care once he arrived at the jail." *Id.*

Later that day, Bascos was taken to the "Main Jail in Santa Clara County." *Id.* ¶ 22. Upon arrival, Defendant Ramirez performed a medical intake assessment on Bascos, and Bascos informed Ramirez that Bascos "had an enlarged heart, shortness of breath, asthma, and that he needed continuous oxygen at four liters per minute." *Id.* Plaintiffs allege that Ramirez noted that Bascos "was on continuous oxygen at 4L," "had right heart failure due to pulmonary hypertension, pulmonary arterial hypertension, difficulty walking," "had active medications," and "sees a pulmonary doctor at Valley Medical Center, having last seen that doctor on March 16, 2016." *Id.* However, Plaintiffs further allege that Defendant Ramirez failed to (1) send or request Bascos to be sent to the hospital for medical clearance; and (2) order or request a physician to order the "continuous oxygen therapy that Mr. Bascos required." *Id.* ¶ 23.

Then, at around 5:32 p.m., Defendant Truong received a telephone order from Defendant Kanakaraj to provide certain medications to Bascos. *Id.* ¶ 24. However, the order did not mention oxygen therapy, and Plaintiffs allege that "the order for medications was not filled at that time." *Id.* Later that evening, at around 10:30 p.m., Defendant Santos conducted a nursing assessment of Bascos. *Id.* ¶ 26. During this assessment, Bascos informed Defendant Santos that Bascos "used four liters of oxygen a minute and that he had not taken" medication "necessary to prevent edema due to his heart failure" since the previous day. *Id.* Plaintiffs allege that Defendant Santos "observed that Mr. Bascos had shortness of breath and was using accessory muscle when breathing, and that his oxygen saturation was at a dangerously low 86%." *Id.* Thus, Defendant Santos "started [Bascos] on four liters of oxygen," "noted [that] [Bascos's] oxygen saturation increased to 96–98%," "advised [] Bascos to notify medical staff if his oxygen tank ran out," and "finally administered his medications." *Id.* Thereafter, at 6:53 a.m. the next morning (April 22,

3

2016), another nurse noted that Bascos "was alert and oriented" but that "his left foot was slightly swollen and the lower lobes of his lungs were diminished." *Id.* ¶ 27. The nurse "ordered the continuation of [Bascos's] oxygen therapy." *Id.*

Plaintiffs allege that while Bascos was incarcerated at the Main Jail over the next three days, Defendants "repeatedly denied [Bascos] the oxygen therapy he needed" by "experimenting with room air only, and inadequate oxygen of 1L, 2L, or 3L per minute." *Id.* ¶ 28. Indeed, Plaintiffs state that Defendants "repeatedly noted their plans to 'wean' [] Bascos" off of his oxygen therapy. *Id.*

Specifically, at around 9:15 a.m. on April 22, 2016, Defendant Kanakaraj noted that (1) Bascos informed Kanakaraj "that [Bascos] needed four liters of oxygen per minute; (2) Bascos "had *Cor Pulmonale* (right sided heart failure) and had had increased shortness of breath for a week"; (3) Bascos's "oxygen saturation was at a dangerously low 85–87%[1] on room air, and his right jugular vein was distended to 2 cm in diameter"; and (4) Bascos may have congestive heart failure. *Id.* ¶ 29. However, Plaintiffs allege that despite these notes, Defendant Kanakaraj did not "send [] Bascos for medical clearance or any emergency or inpatient hospital treatment." *Id.* Instead, Plaintiffs state that Defendant Kanakaraj "decided to provide inadequate oxygen for" Bascos and made a note to "check sats [oxygen saturations] on 1L and 2L [one liter and two liters per minute]." *Id.* ¶ 30. Plaintiffs also allege that afterwards, Bascos's oxygen saturation fell to 93–94% on two liters of oxygen per minute and to 89–90% on one liter of oxygen per minute. *Id.*

Then, at 6:18 a.m. on April 23, 2016, Defendant Caubang noted that Bascos "had vomited earlier that morning, had been vomiting on and off for two weeks, and was experiencing fatigue." *Id.* ¶ 31. Defendant Caubang also observed that Bascos "was being provided only three liters of oxygen a minute" and that Bascos complained of shortness of breath. *Id.* However, Plaintiffs allege that Defendant Caubang did not increase Bascos's oxygen to four liters per minute or request a physician to do so. *Id.*

---

[1] Plaintiffs note that "according to the Mayo Clinic and other generally accepted medical authorities, a normal oxygen saturation should be at least 95%." Compl. ¶ 30.

Later that morning, at around 10:42 a.m., Defendant Cosca "noted that [] Bascos was still on 3 liters of oxygen and he was nauseated." *Id.* ¶ 32. Plaintiffs allege that because "[t]he plan remained to keep [] Bascos on this inadequate level of oxygen" and "to 'wean [him] off oxygen' while trying to keep his oxygen saturation above 92%," Defendant Cosco did not increase or request a physician to increase Bascos's oxygen to four liters per minute. *Id.* Then, at 9:20 p.m. that evening, Defendant Santos "noted that while [] Bascos was only on 3L of oxygen, he had nasal flaring and shoulder rise when breathing, and his pulse was elevated at 109." *Id.* ¶ 33. Nonetheless, Plaintiffs allege that Defendant Santos did not increase Bascos's oxygen. *Id.*

On the morning of the next day, April 24, 2016, Defendant Caubang noted that (1) Bascos's "oxygen saturation levels had dropped to 91% on 3 liters of oxygen a minute"; (2) "his respiration rate was an elevated 24 breaths per minute at rest"; (3) "his heart rate was elevated at 110 beats per minute"; and (4) he "was coughing more and was wheezing." *Id.* ¶ 34. Plaintiffs state that despite these measurements, "Defendants continued with their current treatment plan as noted in the nursing plan," which included "weaning [] Bascos off necessary oxygen." *Id.* Then, at around 9:46 a.m., Defendant Cosca observed that Bascos was still wheezing and that Bascos's "oxygen saturations were only 91–92% on 3L of oxygen." *Id.* ¶ 35. Thus, Defendant Cosca increased Bascos's oxygen level to four liters per minute and subsequently "noted that [] Bascos's oxygen saturation levels increased to 95–96%" as a result. *Id.* However, Plaintiffs state that Defendant Cosca also "noted that Defendants still planned to 'wean' [] Bascos off" oxygen therapy. *Id.* Thus, Plaintiffs allege that throughout the day, "Defendants continued with this experiment of lowering [] Bascos's oxygen to three liters a minute, noting that his oxygen saturation levels would decrease below 92%." *Id.*

Later that evening, at around 9:02 p.m., Defendant Santos "noted that [] Bascos was nauseated when he sits or gets up, and [that] his lung sounds were coarse." *Id.* ¶ 36. Plaintiffs state that nonetheless, Defendant Santos "continued to experiment with providing [] Bascos" only three liters of oxygen per minute and noted that "Bascos's oxygen saturation was 96%" on four liters of oxygen per minute, "but fell to 92%" when reduced to three liters of oxygen per minute.

5

*Id.*

Early next morning on April 25, 2016, at around 4:58 a.m., Defendant Santos observed that Bascos's "oxygen saturation was 94% when he received" four liters of oxygen per minute, but that "his lung sounds were coarse, he had a dry cough, his respiration rate was 22 and his pulse was elevated at 112." *Id.* ¶ 37. Later that morning, at around 10:00 a.m., Defendant Kanakaraj "checked [] Bascos with and without oxygen." *Id.* ¶ 38. Plaintiffs allege that Bascos "continued having a dry cough" and "coarse sounds throughout his lungs," and that Defendant Kanakaraj noted "that [] Bascos had increased shortness of breath for a week, and coughing when he lies down." *Id.* Nevertheless, according to Plaintiffs, Defendant Kanakaraj "continued experimenting with denying [] Bascos oxygen and noted his oxygen saturation was 88–90% on room air." *Id.* Plaintiffs further allege that Defendant Kanakaraj "noted [] Bascos had tachycardia, with an elevated heart rate of 116, had edema and looked worse than he did three days earlier." *Id.* Thus, Defendant Kanakaraj "ordered a chest x-ray but still did not transfer [] Bascos to a hospital." *Id.*

Plaintiffs state that later that day, "Bascos's oxygen was noted to be abnormally low at 90% on 3–4L of oxygen." *Id.* Then, at around 3:54 p.m., Defendant Kanakaraj noted that Bascos (1) "has had increased dyspnea (shortness of breath) for a week"; (2) "was 'definitely more dyspneic today compared to Friday'"; (3) "has been in bed for the last day due to shortness of breath, appeared to have increased work of breathing, and was tachycardic with a heart rate of 115"; and (4) had an "oxygen saturation [of] only 83–86% on room air." *Id.* ¶ 39. Plaintiffs also state that "[a] chest x-ray revealed increased vascular congestion with patchy infiltrates" and that "Bascos's oxygen saturation was now only 93–94% on 4L of oxygen." *Id.*

Later that evening, Plaintiffs allege that "Defendants finally decided to send [] Bascos to the Emergency Room." *Id.* ¶ 40. Plaintiffs state that "[a]n ambulance transported [Bascos], in acute respiratory distress, to Santa Clara Valley Medical Center [("SCVMC")] arriving in the early evening," and that "[t]he ambulance noted that [] Bascos was desaturating into the 80's." *Id.* Subsequently, at around 8:10 p.m., Bascos became unresponsive. *Id.* ¶ 41. Then, at 8:42 p.m., medical care providers at SCVMC "noted that [] Bascos was 'profoundly diaphoretic, markedly

tachypneic, appeared to have worsened as compared with his prior improvement on high-flow nasal cannula.'" *Id.* Soon thereafter, the providers observed that Bascos "became apneic, cyanotic, and pulseless." *Id.* Subsequently, Bascos "was pronounced dead at [SCVMC] less than three hours after he arrived." *Id.*

### B. Procedural History

Plaintiffs filed their complaint on February 22, 2017. ECF No. 1 ("Compl."). Plaintiffs' complaint asserts five causes of action, including (1) deprivation of First, Fourth, and Fourteenth Amendment rights, including the right to be free from deliberate indifference to serious medical needs, pursuant to 42 U.S.C. § 1983 (asserted by all Plaintiffs against Defendants Barry, Ramirez, Kanakaraj, Truong, Caubang, Santos, and Cosca); (2) a *Monell* claim based on failure to train employees and deliberate indifference, pursuant to 42 U.S.C. § 1983 (asserted by all Plaintiffs against Defendant County); (3) violation of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1 (asserted by Plaintiffs A.S.B. and N.M.S.B. against all Defendants); (4) violation of California Government Code § 845.6 (asserted by all Plaintiffs against Defendants Kanakaraj, Ramirez, Truong, Caubang, Santos, Cosca, and the County); and (5) violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") (asserted by all Plaintiffs against the County). Compl. at 12, 13, 17, 19, 20.

Defendants answered Plaintiffs' complaint on April 4, 2017. ECF No. 15. Then, on September 26, 2017, Defendants filed the instant motion for judgment on the pleadings. ECF No. 50 ("Def. Mot."). Plaintiffs opposed Defendants' motion on October 10, 2017, ECF No. 55 ("Pl. Opp."), and Defendants filed a Reply on October 17, 2017. ECF No. 56 ("Reply").

## II. LEGAL STANDARD

### A. Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez*

*v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**B. Leave to Amend**

If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131, 1134–35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

8

Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1  not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks

2  omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment

3  would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party

4  has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendants move for judgment on the pleadings as to Plaintiffs' third, fourth, and fifth causes of action for (1) violation of the Bane Act, Cal. Civ. Code § 52.1; (2) violation of Cal. Gov't Code § 845.6; and (3) violation of the ADA and the Rehabilitation Act. The Court addresses each cause of action in turn.

### A. Bane Act Claim

In the complaint, Plaintiffs A.S.B. and N.M.S.B. assert a claim under the Bane Act, Cal. Civ. Code § 52.1, against all Defendants. The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal Civ. Code § 52.1(a). The Bane Act also provides a cause of action for anyone whose rights are harmed in this way. Cal. Civ. Code § 52.1(b). In order to state a claim under the Bane Act, Plaintiffs must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67, 183 Cal. Rptr. 3d 654 (2015).

Plaintiffs A.S.B. and N.M.S.B. assert that Defendants ran afoul of the Bane Act because (1) "Defendants violated [] Bascos's rights under the Fourteenth Amendment through their deliberate indifference to his serious medical needs"; and (2) "[t]he deliberate indifference claim pleads a Bane Act claim." Pl. Opp. at 11–12. In other words, Plaintiffs A.S.B. and N.M.S.B. argue that in addition to infringing upon the Fourteenth Amendment, Defendants' alleged deliberate indifference to Bascos's medical needs violated the Bane Act. Thus, Plaintiffs A.S.B.

9
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

and N.M.S.B. allege that Defendants violated the Bane Act by deliberately "'weaning' [] Bascos off of life-sustaining oxygen such that his oxygen saturation levels decreased to dangerous life-threatening levels" while Bascos's "ongoing suffering and the deterioration of his health was obvious," and by "refusing to send [Bascos] for emergency medical treatment" until it was too late. Compl. ¶ 63. However, Defendants argue that they are entitled to judgment on the pleadings as to the Bane Act claim because Plaintiffs' complaint does not allege that Defendants' deliberate indifference to Bascos's serious medical needs "was accomplished by threats or commission of violent acts, intimidation, or coercion." Def. Mot. at 4.

The Court agrees with Defendants. As stated above, in order to plead a Bane Act claim, a plaintiff must allege (1) an interference or attempted interference with a legal right; and (2) that "the interference or attempted interference was by threats, intimidation, or coercion." *Allen*, 234 Cal. App. 4th at 67. In their complaint, Plaintiffs allege that despite continuously monitoring Bascos and observing numerous indicators of Bascos's poor physical condition, and in lieu of sending Bascos to the hospital for emergency or inpatient treatment, Defendants repeatedly and deliberately provided Bascos with less oxygen than he required—as indicated by his oxygen saturation levels—in an effort to "wean" Bascos off oxygen therapy. *See generally* Compl. ¶¶ 28–39. However, even assuming that this amounts to an interference with Bascos's legal rights—including his rights under the Fourteenth Amendment—Plaintiffs' complaint contains no facts that suggest that Defendants accomplished this interference through "threat[s], intimidation, or coercion." Cal Civ. Code § 52.1(a). As the California Court of Appeal held in *Allen*, the Bane Act "requires threats, coercion, or intimidation in addition to a constitutional violation, and the plaintiff cannot graft one act onto two distinct burdens." 234 Cal. App. 4th at 68 (citing *Santiago v. Keyes*, 890 F. Supp. 2d 149, 155–56 (D. Mass. 2012). Notably, the *Allen* Court based its holding in part on an earlier California Court of Appeal decision, *Shoyoye v. County of Los Angeles*, which held that "where coercion is inherent in the constitutional violation alleged," the Bane Act "requires a showing of coercion independent from the coercion inherent in" the constitutional violation. 203 Cal. App. 4th 947, 959 (2012).

10

In their opposition, instead of identifying factual allegations in the complaint indicating that Defendants' deliberate indifference to Bascos's medical needs was accomplished by threats, coercion, or intimidation, Plaintiffs A.S.B. and N.M.S.B. point to *M.H. v. County of Alameda*, 90 F. Supp. 3d 889 (N.D. Cal. 2013). In *M.H.*, another court in this district held that "a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act." 90 F. Supp. 3d at 899. However, the *M.H.* court reached that conclusion by reasoning that (1) *Shoyoye*'s rule—that the threats, intimidation, or coercion inherent in a constitutional violation are insufficient to state a Bane Act claim—"applies only when the conduct is unintentional"; (2) deliberate indifference qualifies as intentional conduct for the purposes of a Bane Act claim; and therefore (3) an allegation of deliberate indifference "is adequate to place the case outside the holding of *Shoyoye*." 90 F. Supp. 3d at 898; *see also, e.g.*, *Bass v. City of Fremont*, 2013 WL 891090, at *6 (N.D. Cal. Mar. 8, 2013) (limiting *Shoyoye* to violations involving "human error rather than intentional conduct"); *but see Luong v. City & Cty. of San Francisco*, 2012 WL 5869561, at *7–*8 (N.D. Cal. Nov. 19, 2012) (declining to limit *Shoyoye* to unintentional conduct); *Hunter v. City & Cty. of San Francisco*, 2012 WL 4831634, at *5–*6 (N.D. Cal. Oct. 10, 2012) (same); *Lanier v. City of Fresno*, 2011 WL 149802, at *4 (E.D. Cal. Jan. 18, 2011) ("[A]llegations of excessive force do not equate to section 52.1 threats, intimidation or coercion . . . .").

However, *M.H.* was decided before *Allen*, which reaffirmed the rule of *Shoyoye* in a case involving "intentional conduct that allegedly violated plaintiff's rights, not negligence or human error as in *Shoyoye*." *Harrington–Wisely v. State*, 2015 WL 1915483, at *7 (Cal. Ct. App. Apr. 28, 2015) (unpublished). Additionally, in *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015), the Ninth Circuit followed *Allen* and held that in search-and-seizure cases, which also involve intentional conduct rather than negligence, a plaintiff "must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Id.* at 1196.

11
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

In light of *Allen* and *Lyall*, it is clear that not all intentional acts qualify as "threats, intimidation, or coercion" for the purpose of a Bane Act claim. This Court has previously recognized that while "[s]ome constitutional violations may be serious enough that the coercion inherent in those violations is enough to constitute coercion for the purposes of a Bane Act claim," *see Adamson v. City of San Francisco*, 2015 WL 5467744, at *2, *9 (N.D. Cal. Sept. 17, 2015) (distinguishing *Allen* in a case involving excessive use of force when plaintiff was allegedly "slam[med] . . . to the ground"), "the coercion inherent in" other forms of intentional conduct, like "an arrest or a search-and-seizure" or "police officers' use of barricades and instructions to direct a crowd," is "minimal." *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 983 (N.D. Cal. 2017). Thus, in cases falling under the latter category, a plaintiff "must allege coercion separate from the coercion inherent in the alleged constitutional violation" "in order to state a Bane Act claim." *Id.*

As a result, even assuming that the alleged constitutional violation in the instant case—deliberate indifference to Bascos's serious medical needs—amounts to intentional conduct for purposes of a Bane Act claim, *see M.H.*, 90 F. Supp. 3d at 898, the controlling inquiry is whether "the coercion inherent in" such deliberate indifference is "enough to constitute coercion for the purposes of a Bane Act claim." *Hernandez*, 241 F. Supp. 3d at 983. The Court finds that the alleged deliberate indifference in the instant case is much closer to "an arrest or a search-and-seizure" or the "use of barricades and instructions to direct a crowd" than it is to the use of excessive force, in that "the coercion inherent in" deliberate indifference to a person's serious medical needs is "minimal." *Id.* Thus, a plaintiff alleging deliberate indifference to serious medical needs must also "allege coercion separate from the coercion inherent in" that deliberate indifference "in order to state a Bane Act claim." *Id.* Because Plaintiffs A.S.B. and N.M.S.B. have not done so here, the Court GRANTS Defendants' motion for judgment on the pleadings as to the Bane Act claim. The Court does so with leave to amend because amendment would not necessarily be futile, as Plaintiffs A.S.B. and N.M.S.B. may be able to allege sufficient facts to support their Bane Act claim. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the

allegation of other facts" (internal quotation marks omitted)).

## B. California Government Code § 845.6 Claim

In their cause of action under California Government Code § 845.6, Plaintiffs allege that Defendants Kanakaraj, Ramirez, Truong, Caubang, Santos, Cosca, and the County (collectively, the "§ 845.6 Defendants") knew or had reason to know that Bascos was "in need of immediate and a higher level of medical care, treatment, and observation and monitoring" but "failed to take reasonable action to summon and/or provide him access to such medical care and treatment." Compl. ¶ 69. The § 845.6 Defendants contend that they are entitled to judgment on the pleadings because Plaintiffs' complaint asserts "no allegations against individual County actors for failure to summon medical care; only criticism of medical decision-making attributed to County jail medical staff." Def. Mot. at 6. For the reasons discussed below, the Court concludes that the § 845.6 Defendants are entitled to judgment on the pleadings on Plaintiffs' cause of action for violation of California Government Code § 845.6.

Under California Government Code § 845.6, public entities and public employees are generally not "liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his [or her] custody." Cal. Gov't Code § 845.6. Public entities and public employees *are* liable for injuries proximately caused to prisoners where: (1) "the employee is acting within the scope of his [or her] employment," (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he [or she] fails to take reasonable action to summon such medical care." *Id.*

However, once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care. *Watson v. California*, 21 Cal. App. 4th 836, 841–843 (Ct. App. 1993). It is not a violation of § 845.6 to fail "to provide further treatment, or to ensure further diagnosis or treatment, or to monitor [the prisoner] or follow up on his progress." *Castaneda v. Dep't Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1072 (2013). California courts have also held that § 845.6 does not impose an obligation to provide necessary medication or treatment, *Nelson*, 139 Cal. App. 3d at 81. Nor does § 845.6 encompass a duty to assure that

13
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

medical staff properly diagnose and treat the condition or to monitor the quality of care provided. *Watson*, 21 Cal. App. 4th at 841–843. Thus, once a medical practitioner has been summoned to provide medical care, the practitioner's failure to provide adequate care may constitute malpractice, but it cannot amount to a failure to summon medical care in violation of § 845.6. *Nelson*, 139 Cal. App. 3d at 81.

In the instant case, the allegations underlying Plaintiffs' § 845.6 claim for failure to summon medical care are entirely and exclusively about the actions of the § 845.6 Defendants, who were all health care providers at the County's Main Jail. Compl. ¶ 9. Specifically, as discussed above, Plaintiffs' complaint alleges that the § 845.6 Defendants delayed in providing Bascos with his medications, intentionally attempted to "wean" Bascos off oxygen therapy by providing him less than four liters of oxygen per minute, and failed to send Bascos to SCVMC for emergency treatment until it was too late. Compl. ¶¶ 22–40. However, Plaintiffs' complaint does not allege that anyone failed to "take reasonable action to summon [] medical care." Cal. Gov't Code § 845.6. On the contrary, Plaintiffs' complaint alleges that Bascos received a medical intake assessment from Defendant Ramirez upon arriving at the Main Jail, Compl. ¶ 22, and was thereafter continuously monitored and given varying amounts of oxygen therapy by different members of the jail's medical staff. *Id.* ¶¶ 23–40. Further, although Plaintiffs allege that the § 845.6 Defendants improperly delayed in providing medications to Bascos, wrongfully insisted on providing Bascos less than four liters of oxygen per minute, and waited too long to send Bascos to the emergency room, these "are all facts which go to the reasonableness of the medical care provided, but do not constitute a failure to *summon* medical care." *Castaneda*, 212 Cal. App. 4th at 1072; *see Nelson*, 139 Cal. App. 3d at 81 ("Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist . . . cannot be characterized as a failure to summon care."). In other words, Plaintiffs' complaint essentially challenges the medical judgment of the § 845.6 Defendants and alleges that those Defendants provided inadequate care. Thus, Plaintiffs' allegations may be sufficient to support a malpractice claim, but they cannot support a failure to summon claim under § 845.6. *Nelson*, 139 Cal. App. 3d

at 81.

According, the Court GRANTS the § 845.6 Defendants' motion for judgment on the pleadings as to the § 845.6 claim. However, the Court affords Plaintiffs leave to amend because amendment would not necessarily be futile, as Plaintiffs may be able to allege sufficient facts to support a cause of action under § 845.6. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### C. ADA and RA Claim

Finally, Plaintiffs' complaint alleges that the County discriminated against Bascos because of Bascos's disability in violation of the ADA and the RA. *See* Compl. ¶¶ 71–80. Title II of the ADA prohibits public entities from both discriminating against qualified individuals because of a disability and excluding such individuals from benefitting from or participating in a public program because of their disability. 42 U.S.C. § 12132. "The ADA also requires public entities to make reasonable accommodation to disabled individuals." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017). Further, "[s]ection 504 of the RA extends these protections to 'any program or activity receiving financial assistance.'" *Id.* (quoting 29 U.S.C. § 794). As a result, there is "no significant difference in analysis of the rights and obligations created by the ADA and the [RA]." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). To establish a violation of Title II of the ADA, a plaintiff must demonstrate that (1) he "is a qualified individual with a disability"; (2) he "was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities"; and (3) "such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Similarly, to establish a violation of § 504 of the RA, a plaintiff must demonstrate that (1) he "is handicapped within the meaning of the RA"; (2) he "is otherwise qualified for the benefit or services sought"; (3) he "was denied the benefit or services solely by reason of [his] handicap"; and (4) "the program providing the benefit or services receives federal financial assistance." *Id.*

Both the ADA and the RA apply to correctional facilities and therefore prohibit such facilities from excluding disabled inmates from participation in inmate services, programs, or activities. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) (explaining that the ADA and RA apply in the context of correctional facilities). Plaintiffs allege that Bascos was "gravely disabled" because "as a result of his medical condition, [Bascos was] unable to provide for his basic personal needs for food, clothing, or shelter" and "substantially limited [in] one or more of his major life activities, including for example, breathing, walking, and standing." Compl. ¶ 79. Further, Plaintiffs assert that the County denied Bascos "accommodation for his disabilities" in violation of the ADA and the RA. *Id.* Specifically, Plaintiffs assert that the County violated Bascos's rights under the ADA and the RA by (1) failing to provide Bascos timely "access to appropriate medication" and the "necessary amount of oxygen"; and (2) failing to appropriately monitor Bascos even though the County knew that Bascos had a serious medical condition. *Id.* ¶ 78. For its part, the County argues that it is entitled to judgment on the pleadings as to Plaintiffs' ADA and RA claim because while Plaintiffs' allegations may indicate that Bascos received inadequate treatment for his disability, Plaintiffs have not alleged enough facts to show that the County discriminated against Bascos on the basis of his disability. Mot. at 10; Reply at 5 ("[W]hile the ADA prohibits discrimination because of a disability, it does not prohibit inadequate treatment for a disability.").

The Court agrees with the County. An inmate "can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA or the RA by pleading . . . denial of reasonable modifications or accommodations." *Atayde*, 255 F. Supp. 3d at 1000. However, while it is true that a correctional facility's "deliberate refusal" to accommodate an inmate's "disability-related needs in such fundamentals as . . . medical care" may amount to a violation of the ADA, *United States v. Georgia*, 546 U.S. 151, 157 (2006), the Ninth Circuit has stated that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010). In so stating, the Ninth Circuit rejected an argument that a county discriminated against an inmate on the basis of his

16
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

depression in violation of the ADA by depriving the inmate of "programs or activities to lessen his depression." *Id.* (internal quotations omitted and alteration adopted); *see also id.* ("'The ADA does not create a remedy for medical malpractice.'") (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

Thus, as another federal court within the Ninth Circuit has observed, "[t]here is no clear guidance as to whether a plaintiff may ever state a failure to accommodate claim under the ADA or RA based on a correctional facility's failure to provide medical treatment for a disability." *Atayde*, 255 F. Supp. 3d at 1001. Some courts have found that "an outright and deliberate denial or refusal of access to medical care for a qualifying disability" may be actionable under the ADA and the RA. *Payne v. Arizona*, 2010 WL 1728929, *5 (D. Ariz. Apr. 26, 2010); *see id.* at *4 ("[W]here the challenged practice constitutes 'outright denial of medical services,' an ADA claim may lie." (quoting *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006))). However, other courts "have declined to find cognizable ADA or RA claims where there is the alleged denial only of those services necessary for addressing a disability." *Atayde*, 255 F. Supp. 3d at 1002 (citing *Grzan v. Charter Hosp.*, 104 F.3d 116, 121–22 (7th Cir. 1997), *Johnson v. Thompson*, 971 F.2d 1487, 1493–94 (10th Cir. 1992), and *O'Guinn v. Nevada Dep't of Corr.*, 468 F. App'x 651, 653 (9th Cir. 2012)). Under this approach, a plaintiff must allege that he was denied "medical services beyond those necessary for treating his underlying disability." *Id.* (listing cases).

The Court need not decide which of these approaches to adopt. Even assuming that "an outright and deliberate denial or refusal of access to medical care for a qualifying disability" is actionable under the ADA and the RA, Plaintiffs have not alleged an outright denial of medical care for Bascos's medical conditions. *Payne*, 2010 WL 1728929 at *5. Instead, as discussed above, Plaintiffs' complaint alleges only that the medical staff at the County's Main Jail delayed in providing medications to Bascos, provided Bascos oxygen therapy at an inadequate level (less than four liters of oxygen per minute), and delayed in sending Bascos to the emergency room. Although these allegations may suggest that the medical staff provided Bascos inadequate

17
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

treatment for his medical conditions, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022; *see also Bryant*, 84 F.3d at 249 ("The ADA does not create a remedy for medical malpractice."). Further, the fact that Bascos received any oxygen therapy, medication, and monitoring at all "indicates that that there was no outright and deliberate denial of access to care." *Payne*, 2010 WL 1728929 at *5 (rejecting a plaintiff's claim that a prison discriminated against him on the basis of his diabetes in violation of the ADA, and explaining: "That the state initially failed to diagnose [the plaintiff's] diabetes amounts to no more than a negligent medical judgment. Furthermore, that [the plaintiff] received any glucose tablets, insulin, and food, albeit sporadically, indicates that there was no outright and deliberate denial of access to care.").

Accordingly, the Court GRANTS the County's motion for judgment on the pleadings as to Plaintiffs' claim under the ADA and RA. The Court affords Plaintiffs leave to amend because the Court concludes that amendment would not necessarily be futile, as Plaintiffs may be able to allege sufficient facts to support a claim under the ADA and RA. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. In particular:

1. Defendants' motion for judgment on the pleadings as to Plaintiffs A.S.B. and N.M.S.B.'s cause of action under the Bane Act is GRANTED with leave to amend.
2. The § 845.6 Defendants' motion for judgment on the pleadings as to Plaintiffs' cause of action under California Government Code § 845.6 is GRANTED with leave to amend.
3. The County's motion for judgment on the pleadings as to Plaintiffs' cause of action under the ADA and RA is GRANTED with leave to amend.

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiffs' claims. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: January 12, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

19
Case No. 17-CV-00869-LHK
ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND